UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| -v.- | : | 17 Cr. 450 (KPF) |
| | : | |
| WALTER C. LITTLE, | : | |
| a/k/a "Chet," and | : | |
| ANDREW M. BERKE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT WALTER C. LITTLE'S MOTION FOR A TRANSFER TO THE MIDDLE DISTRICT OF FLORIDA

JOON H. KIM
Acting United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Robert Allen
Assistant United States Attorney
      - Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 1

ARGUMENT .......................................................................................................... 3

    I.    THIS COURT SHOULD DENY LITTLE'S MOTION TO TRANSFER VENUE. .......... 3

      A.  Applicable Law .......................................................................................... 3

      B.  Discussion ................................................................................................. 5

          1.  Residence of the Defendant ................................................................. 5

          2.  Location of Witnesses ......................................................................... 7

          3.  Location of Events ............................................................................ 10

          4.  Location of Relevant Documents ........................................................ 11

          5.  Disruption to Defendant's Business ................................................... 11

          6.  Expense to the Parties ....................................................................... 12

          7.  Location of Counsel .......................................................................... 13

          8.  Relative Accessibility ....................................................................... 14

          9.  Docket Conditions ............................................................................ 14

          10. Special Considerations ..................................................................... 14

CONCLUSION...................................................................................................... 17

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in response to the August 14, 2017 motion of defendant Walter C. Little, a/k/a "Chet," to transfer his case to the Middle District of Florida pursuant to Federal Rule of Criminal Procedure 21(b) ("Def. Mot.").

The Government respectfully submits that Little's motion should be denied. The law in this Circuit is clear that, "[a]s a general rule," a prosecution should "be retained in the original district" in which it is charged. *United States* v. *Parrilla*, No. 13 Cr. 360 (AJN), 2014 WL 1621487, at *13 (S.D.N.Y. Apr. 22, 2014). There is no reason to ignore that presumption here. Little chose to trade securities on New York exchanges based on inside information, and many of the trades he and his co-defendant made cleared in Manhattan. In addition, granting Little's motion would require severance from his non-moving co-defendant, resulting in unnecessary and duplicative proceedings in multiple districts. In any event, although it would undoubtedly be easier for Little to attend proceedings in Florida, convenience to the defendant "is not, by itself, a sufficient basis for a transfer." *United States* v. *Conner*, 2001 WL 114314, at *3 (S.D.N.Y. Feb. 9, 2001) (internal quotation marks omitted). That is especially true where, as here, the defendant has sufficient resources to travel to New York for the short trial that would be required in this case. Indeed, he was a law-firm partner who chose to supplement his already lucrative income with hundreds of thousands of dollars in profits from illegal trading.

## BACKGROUND

From in or about 2005 through May 2016, Little was employed as an attorney and eventually a partner at Foley & Lardner, LLP ("Foley"), an international law firm with offices throughout the United States. (May 5, 2017 Compl., *United States* v. *Walter C. Little et al.*, No. 17 Cr. 450 (KPF) [Dkt. 1] ("Compl.") ¶ 8(b)). Attorneys at Foley provided a range of legal services

to their clients, including advice on sensitive corporate events such as mergers and acquisitions, earnings releases, and securities offerings. (*Id.* ¶ 8(a)). In providing these services, Foley regularly obtained nonpublic information from its clients. (*Id.* ¶ 9(a)). Despite internal policies specifically prohibiting his actions, Little accessed documents saved on Foley's servers containing material, nonpublic information about upcoming corporate events and then traded securities based on the information he had learned. (*Id.* ¶ 9). He also tipped that information to Berke, who placed his own trades, and, in certain instances, kicked back portions of his profits to Little using fictitious legal invoices to disguise the nature of the payments. (*See id.* ¶ 29).

As alleged the Indictment, Little placed trades based on information that he misappropriated from seven different Foley clients: Hanger, Inc.; Magnatek, Inc.; Pentair PLC; Whiting Petroleum Corp.; Douglas Dynamics, Inc.; Oshkosh Corp.; and Harley Davidson, Inc. (*See* Indictment ¶¶ 3-5). In total, Little made approximately $327,252 in profits by trading on misappropriated information, excluding the tens of thousands of dollars he received as kickbacks for information he tipped to his co-defendant, Berke. (Compl. ¶ 9(d); *see also id.* ¶ 29 (describing fictitious legal payments from Berke to Little of nearly $100,000)).

On May 5, 2017, Little and Berke were charged with conspiring to commit securities fraud and with securities fraud. (Compl. ¶¶ 1-5). On that same day, the Securities and Exchange Commission ("SEC") filed a parallel action charging Little and Berke with the same insider-trading scheme (the "SEC Action"). *SEC* v. *Little et al.*, No. 17 Civ. 3536 (JGK). The Government subsequently filed a motion to intervene in the SEC Action and requested a limited stay of discovery relating to materials that would constitute Jencks Act materials in the criminal case. The Government did *not* seek to stay document discovery in full or to prevent motions practice. Judge

Koeltl subsequently granted the Government's motion to intervene and partial stay.  *See* July 25, 2017 Order, *SEC* v. *Little et al.*, No. 17 Civ. 3536 (JGK) [Dkt. 38].

The Government presently expects that its evidence at trial would consist, among other things, of (1) documentary evidence, including telephone records, brokerage records, and other records of communications between the defendants; (2) testimony of law enforcement and other witnesses who have analyzed Little and Berke's trading records, phone records, and electronic devices; who can explain stock and option trading; and who have completed various other investigative steps; (3) testimony of witnesses from Foley, who interviewed Little regarding his trading and will provide information regarding Foley's internal client-information policies and document management systems; and (4) testimony of witnesses from the companies whose information Little misappropriated.  Additional witnesses will likely be identified as the Government continues to investigate the defendants' trading and begins to prepare for trial.  The witnesses that the Government presently anticipates calling at trial, however, are either located in the Southern District of New York or—for the witnesses from Foley and from the companies referenced above—are scattered across the country.  Aside from the defendants, the Government is not aware of any relevant witnesses located in the Middle District of Florida.

## ARGUMENT

## I.   THIS COURT SHOULD DENY LITTLE'S MOTION TO TRANSFER VENUE.

### A.  Applicable Law

"As a general rule, a criminal prosecution should be retained in the original district" in which it was charged.  *United States* v. *Borker*, 2011 WL 1630344, *1 (S.D.N.Y. Apr. 28, 2011); *see also Parrilla*, 2014 WL 1621487, at *13; *United States* v. *Conner*, 2001 WL 114314, at *3 (S.D.N.Y. Feb. 9, 2001); *United States* v. *United States Steel Corp.*, 233 F. Supp. 154, 157

(S.D.N.Y. 1964).  That said, Federal Rule of Criminal Procedure 21(b) provides that "[u]pon the defendant's motion, the court may transfer the proceeding . . . against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."  To prevail on such a motion, the defendant carries the burden of proof and must overcome the presumption against transfer by providing "concrete demonstrations" why transfer is required by the interests of justice.  *United States* v. *Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (Sotomayor, J.) (internal quotation marks and citation omitted).  The moving defendant must also provide "factual substantiation" for his contentions that a transfer is in the interests of justice. *United States* v. *Williams*, 437 F. Supp. 1047, 1051 (W.D.N.Y. 1977); *see also Spy Factory*, 951 F. Supp. at 456 ("the court must rely on 'concrete demonstrations'" of fact).

Although the Supreme Court has never adopted a strict test for Rule 21(b) motions, the Court has identified ten considerations bearing on that discretion:

> (1) location of . . . [the] defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Platt* v. *Minnesota Mining Co.*, 376 U.S. 240, 243-44 (1964).  "No one of these considerations is dispositive," and the district court must instead "strike a balance and determine which factors are of greatest importance."  *United States* v. *Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990).

The appropriateness of a transfer is "vested in the sound discretion of the district court." *Maldonado-Rivera*, 922 F.2d at 966.  The trend in recent years, however, has been to deny requests for transfer, as "the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades" have obviated the inconvenience to defendants from facing trial in a different Districts.  *United States* v. *Quinn*, 401 F. Supp. 2d 80, 85-86 (D.D.C.

4

2005); *see also United States* v. *Larsen*, No. 13 Cr. 688 (JMF), 2014 WL 177411, at *2 (S.D.N.Y. Jan. 16, 2014) (noting that the defendant's burden in seeking transfer under Federal Rule of Criminal Procedure 21(b) "is not often or easily met").

## B.  Discussion

An analysis of each of the relevant *Platt* factors makes clear that the defendant has failed to meet his burden of demonstrating that this case should not be prosecuted in the district in which it was charged.  Little's motion should be denied.

### 1.  Residence of the Defendant

Little's primary basis for transfer is that traveling to the New York area for trial would be expensive and difficult.  (Def. Mot. at 6).  The law, however, is clear that "inconvenience to the defendant . . . is not, by itself, a sufficient basis for a transfer."  *Conner*, 2001 WL 114314, at *3 (internal quotation marks omitted)); *Spy Factory*, 951 F. Supp. at 456 (reasoning that the location of a defendant's residence should not be given "dispositive weight").  Thus, courts in this District have routinely rejected requests for transfer in analogous circumstances.   In *United States* v. *Ebbers*, 2004 WL 2346154, at *1 (S.D.N.Y. Oct. 18, 2004), for example, the Court denied a motion to transfer based primarily on defendant's residence in a securities fraud case because "[t]he inconvenience he faces is no different from that faced by other defendants who are prosecuted outside the states where they live."  *See also Parrilla*, 2014 WL 1621487, at *15 (denying transfer in part "[b]ecause 'defendant's residence . . . should not be given dispositive weight'" and thus "this factor alone cannot support transfer") (quoting *Spy Factory*, 951 F. Supp. at 456).

The reason for holdings like the one in *Ebbers* is straightforward: the burden the defendant identifies will accrue in every case, regardless of where it is tried.  Thus, to the extent this factor were sufficient to justify transfer, it would swallow the ordinary presumption that criminal cases should be tried where they are charged.  As the Court explained in *United States Steel Corp.*:

At the outset it must be recognized that every litigation, particularly a criminal prosecution, imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities. . . . The Court is satisfied that no matter where this trial is conducted, there will be inconvenience to the parties, their executives, their counsel and their witnesses. But mere inconvenience, interference with one's routine occupational and personal activities, and other incidental burdens which normally follow when one is called upon to resist a serious charge do not *ipso facto* make the necessary showing that a transfer is required in the interest of justice. As a general rule a criminal prosecution should be retained in the original district. To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome; and, necessarily, any such determination must take into account any countervailing considerations which may militate against removal.

233 F. Supp. at 157; *see also Maldonado-Rivera*, 922 F.2d at 966 (upholding denial of a transfer motion and noting that "the residence of the defendants has no independent significance in determining whether transfer to that district would be in the interest of justice"); *United States* v. *Wilson*, No. 01 CR 53 (DLC), 2001 WL 798018, at *3 (S.D.N.Y. July 13, 2001).

The defendant claims that "as a matter of policy, defendants should ordinarily be tried where they reside." (Def. Mot. at 6). This, however, reverses the ordinary presumption: the District in which a case is charged is entitled to deference, not the District in which the defendant resides. *See Parrilla*, 2014 WL 1621487, at *13. Further, the interest in a defendant's location is less important now than it was in 1960, the date of one of the cases on which the defendant relies. (*See* Def. Mot. at 6 (citing *United States* v. *Cashin*, 281 F.2d 669, 675 (2d Cir. 1960))). Long-distance travel is cheaper than it once was, and defendants are able to prepare for trial remotely in a way that was infeasible in the past. *See Quinn*, 401 F. Supp. 2d at 85-86 (concluding that "[t]ransfer under Rule 21(b), although not unheard of, has been rare in recent years. This is hardly surprising when one considers the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades.").

Here, moreover, the burden on the defendant is by no means insurmountable. The defendant had a highly lucrative job at Foley for over a decade, ultimately being named a partner at the firm and compensated accordingly. His wife also works as the chief financial officer of a law firm. (*See* Def. Mot. at 1). And while the defendant claims that he has "sold [his] home and moved into a rental apartment," his failure to make any accounting of his assets in his motion is telling. Simply put, this case is nothing like the situation in *United States* v. *Hanley*, 1995 WL 60019 (S.D.N.Y. Feb. 10, 1995) (cited Def. Mot. at 6), in which "an indigent defendant" faced an out-of-State trial with no assistance other than "a one-way ticket." *Id.* at *2.

Further, the cost and disruption of holding trial in New York would be limited. Little has not identified any particular family or personal responsibilities that would militate in favor of transfer. He does not, for example, have a sick relative who needs his attention or a business that would wither without his presence. Even if he did have such responsibilities, minimal travel will be required in this case. The defendant has not identified any hearings he expects will be required, and, to the extent he needs to do so, he can seek permission from the Court to appear telephonically for status conferences. The trial in this case, moreover, will be short—likely less than two weeks. The expense and disruption from the trial would accordingly be far less than in other cases where motions to transfer have been denied. *See, e.g.*, *United States* v. *Stein*, 429 F. Supp. 2d 633, 645-46 (S.D.N.Y. 2006) (denying transfer in a trial expected to last six to eight months).

## 2.  Location of Witnesses

The location of witnesses favors holding trial in the New York area. Little claims that he has been "unable to identify any potential government witnesses from SDNY" (Def. Mot. at 8)— a surprisingly premature assertion given that he has not yet received discovery. In any event, it is incorrect. The Government expects to call multiple categories of New York-based witnesses: New York-based law enforcement witnesses, including the case agent and additional agents who will

testify about analyses of the defendants' trading and communication records; witnesses from securities exchanges and broker-dealers located in Manhattan; and custodians of record from financial institutions and telecommunications companies, many of which, in the Government's experience, provide witnesses from New York-based offices.  Forcing these witnesses to travel to Florida for trial would be expensive, and, in the case of the law enforcement witnesses, potentially disruptive to their continuing work on other investigations.[1]

In addition to these witnesses, the Government expects to call witnesses from the companies whose information Little misappropriated—Hanger, Inc.; Magnatek, Inc.; Pentair PLC; Whiting Petroleum Corp.; Douglas Dynamics, Inc.; Oshkosh Corp.; and Harley Davidson, Inc. New York is a far more convenience forum for these witnesses.   These companies are headquartered in different cities across the United States,[2] but they are represented for purposes of this case primarily by law firms with offices in New York.  It will be easier for these scattered witnesses to assemble in New York than the Middle District of Florida.

The Government's anticipated witnesses from Foley are similarly situated.  Although Foley has a Florida office where Little worked before his termination, the Government does not anticipate calling any witnesses from that office.   The witnesses that the Government does anticipate calling—witnesses who interviewed Little about his trading during the course of an

---

[1] Little discounts the importance of custodian witnesses on the view that relevant records could be admitted "through a business records certification."  (Def. Mot. at 3).  That certification, however, would likely be hearsay in a criminal trial.  And while the defendants may choose to stipulate to the authenticity of the relevant documents, the Government cannot rely on this.

[2] Hanger, Inc. is headquartered in Austin, Texas; Magnetek, Inc. in Menomonee Falls, Wisconsin; Pentair PLC in Minneapolis, Minnesota; Whiting Petroleum Corp. in Denver, Colorado; Douglas Dynamics in Milwaukee, Wisconsin; Oshkosh Corp. in Oshkosh, Wisconsin; and Harley Davidson in Milwaukee, Wisconsin.  (*See, e.g.*, Indictment ¶ 8).

internal investigation by the firm, for example—are located in Milwaukee and Washington D.C., which, again, are both easily accessible to New York.

On the other side of the equation, Little states in his brief that he has a number of Florida-based fact and character witnesses he would like to call at trial. (Def. Mot. at 7). This claim should be given no weight. First, the defendant has the ability to subpoena witnesses and require their appearance in this District. To the extent he needs funds for their transportation, the Criminal Justice Act makes resources for these purposes available to qualifying defendants. *See Spy Factory*, 951 F. Supp. at 456. Second, Little's claim is simply too vague and unsubstantiated to be credited. Given that the defendant has the burden of proof in arguing for transfer, "a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer." *Id*. (internal quotation marks omitted). "Defendants must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial." *Id*. (internal quotation marks omitted)); *see also United States* v. *Juncal*, No. 97 Cr. 1162 (JFK), 1998 WL 473949, at *5 (S.D.N.Y. Aug. 7, 1998) (finding "no basis to grant the motion to transfer" where defendant failed to make "a specific proffer of testimony from specific witnesses to allow the court to make an informed decision about the importance of these witnesses"). Little has not met that burden here. He does not explain who his supposed witnesses are, what testimony he expects them to provide, or why that testimony would be important and admissible. Other courts have denied transfer requests for similar shortcomings, and this Court should do the same. *See, e.g., United States* v. *Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2944626, at *2 (S.D.N.Y. July 31, 2008) ("bare assertion" of hardship was insufficient to tip this Platt factor in favor of transfer); *Stein*, 429 F. Supp. 2d at 645-46 (denying transfer motion where the defendants failed to show that potential defense witnesses would be unable or unwilling to travel to the Southern District of New York);

9

*Ebbers*, 2004 WL 2346154, at *1 (defendant did not allege that "witnesses would be unable to testify in New York, that he would be unable to call them, or that he would be financially incapable of paying such witness' expenses").

### 3.   Location of Events

Little also fails to demonstrate that the location of events in this case warrants transfer. Indeed, the charges in this case are national in scope rather than "Florida-specific."  (Def. Mot. at 8).  Little caused securities transactions to be placed on Manhattan-based securities exchanges based on inside information he misappropriated from his employer.  Certain of these transactions were not only placed on Manhattan-based exchanges, but were "cleared," or executed, by Manhattan-based brokerage firms.  (*See, e.g.*, Compl. ¶¶ 3(c), (f), (i), (l)).  Thus, the defendants voluntarily caused their criminal conduct to occur in the Southern District of New York, and these New York connections were accordingly critical to the execution of the criminal conduct.  The decision to trade securities on Manhattan-based exchanges or use Manhattan based broker-dealers, for example, was not by chance or unforeseeable, but rather a clear choice that was either known to the defendant or foreseeable to him.  Little now seeks to avoid the district he utilized for part of his criminal conduct despite having chosen to engage in a fraudulent scheme that relied on national securities markets with a heavy presence in this District and despite having chosen to utilize facilities that were based out of this District in so doing.  This Court should not permit that evasion absent compelling circumstances that are lacking here.

When a defendant's criminal enterprise is national in scale, moreover, the court should refuse to transfer venue to a defendant's home district merely because it was where he coordinated the illicit activities. *See Spy Factory*, 951 F. Supp. at 457.  To rule otherwise would give defendants an advantage:  even if the crimes are national in reach, a defendant could automatically have a trial near his home.  Indeed, in *Spy Factory*, then-Judge Sotomayor denied a transfer of venue from

10

New York to Texas because the defendant's illegal sales of wiretapping equipment were national in scope, making New York an equally appropriate venue—and she did this despite the fact that the defendant's company was headquartered in Texas and only had contact with New York through telephone sales calls. *Id*. at 457. Other cases also hold the national scope of a crime to be a critical factor when denying a transfer of venue motion. *See, e.g., Ebbers*, 2004 WL 2346154, at *1 (securities fraud); *Wilson*, 2001 WL 798018 at *2 (accounting fraud); *United States* v. *Guastella*, 90 F. Supp. 2d 335, 339 (S.D.N.Y. 2001) (international investment scheme).

### 4.  Location of Relevant Documents

The location of the evidence similarly fails to support Little's request. The defendant has had, and will continue to have, easy access to the relevant documents in any district because of electronic discovery. *See Spy Factory*, 951 F. Supp. at 458.

Little claims that "relevant documents and records are likely present in the [Middle District of Florida], including, but not limited to, documents from the Foley branch in Tampa relating to Mr. Little, as well as documents in the possession of Mr. Little and co-defendant Berke." (Def. Mot. at 10). This argument is false. Foley's documents have already been produced to the Government, and, as a result, are located in the Southern District of New York. In any event, they never originated in Florida. The documents that Little improperly accessed were created by lawyers working in other Foley offices located across the country, primarily Foley's Milwaukee, Wisconsin office. They were not created by Tampa-based lawyers. And Foley's internal investigation of Little's conduct, which included interviews, was led by attorneys located in Milwaukee and Washington, D.C.—again, not Florida.

### 5.  Disruption to Defendant's Business

Little does not allege that a trial would disrupt his businesses, to the extent he has any. Accordingly, this factor weighs against transfer.

11

### 6. Expense to the Parties

The next *Platt* factor, expense to the parties, also fails to support transfer. As already discussed, Little was employed for years in a lucrative position at Foley, first as an associate and eventually as a partner. After he was terminated by Foley, he secured employment as a partner at a competing law firm (presumably omitting the nature of his separation from Foley, as he was terminated for having misappropriated and traded on client information). And his wife is employed as the chief financial officer of a local law firm. (Def. Mot. at 1). Although he currently has retained counsel, a public defender or CJA attorney, along with associated resources, would be available to the extent he somehow qualified. Little accordingly has far greater resources than many other defendants, and, as a result, he cannot plausibly argue that he would be unable to defend himself if he were to face a short trial in this District before Your Honor. *See United States* v. *Quattrone*, 277 F. Supp. 2d 278, 279 (S.D.N.Y. 2003) ("While the defendant resides in the Northern District of California and while I credit and am empathetic to a distressing family situation, the trial is only scheduled to last two weeks and I do not find these factors to be dispositive."); *Stein*, 429 F. Supp. 2d at 645 (holding that a trial anticipated to last six to eight months would not by itself require a transfer in the interest of justice).

Little claims that his expense will be magnified because the case "involves securities fraud, a significant number of documents, and potentially complicated legal and factual issues." (Def. Mot. at 11). He further claims that the trial could "last several weeks" and that "pre-trial proceedings will require multiple court appearances." (*Id.*). But to be clear: there is nothing complicated about this case. Little signed internal Foley compliance policies advising him not only of Foley's own prohibition of trading based on misappropriation of client information, but also the illegality of it. He then accessed sensitive corporate documents and traded the underlying securities immediately afterwards, sometimes within minutes. This conduct is as straightforward

12

as insider trading cases get. The trial will accordingly be limited in duration and scope, as will the number of pre-trial appearances. Further, the Government will not object to the defendant and his counsel appearing telephonically for conferences to the extent the Court permits.

Litigating the case in Florida, on the other hand, would be tremendously expensive for the Government. "It would impose an enormous burden on the government to move the prosecutors, investigators, support staff, court staff, and others familiar with the case . . . to another jurisdiction." *Ebbers*, 2004 WL 2346154, at *2; *see also Carey*, 152 F. Supp. 2d at 422-23 (denying transfer motion where, "if venue is transferred to the District of Columbia, the effect is merely to shift the economic burden to the government"). The Government anticipates that, at a minimum, two prosecutors, a paralegal, and multiple case agents and witnesses would need to travel to Florida and stay in hotels for a period of time preceding and during trial. Travel back to New York during at various times during this period, moreover, would likely be necessary to fulfill other case-related and investigative obligations. Courts have recognized that "public funds are to be safeguarded," *United States* v. *Atwood*, 538 F. Supp. 1206, 1209 (E.D. Pa. 1982), and a transfer under these circumstances would be inconsistent with that obligation.

### 7.  Location of Counsel

The location of counsel similarly favors trying this case in New York. The prosecutors, who would try this case even in the event of a transfer, are located in New York. Counsel for Berke is located in Washington, D.C., which offers convenient and inexpensive transportation to New York by train or shuttle. And, as already discussed, the companies whose information Little misappropriated are represented by attorneys located in Washington, D.C., but at firms with significant presences in Manhattan.

### 8.   Relative Accessibility

To the extent it is meaningful, *Platt*'s relative accessibility factor favors the Southern District of New York.  New York is accessible by three airports and its courthouse is in a major metropolitan area.  It will be convenient for witnesses and counsel.  *See Spy Factory*, 951 F. Supp. at 460 (finding factor "does not weigh toward either conclusion"); *United States Steel Corp.*, 233 F. Supp. at 158 ("The efficiency of modern air transportation renders rather sterile any argument that one forum is more accessible than the other).

### 9.   Docket Conditions

The defendants do not suggest any reason to believe that docket conditions in the Middle District of Florida are preferable to those in the Southern District of New York.  As to this case at least, the opposite is true.  This Court has unique experience with securities fraud cases, and, indeed, has long been considered the "Mother Court" in the field given its geographical link to the New York financial markets and the number of securities fraud cases litigated here.  *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 762 (1975) (Blackmun, J., dissenting); *see also Morrison* v. *National Australia Bank Ltd.*, 561 U.S. 247, 274 (2010) (Stevens, J., concurring) (referencing importance of the "'Mother Court' of securities law" in developing doctrine (quoting *Blue Chip Stamps*, 421 U.S. at 762).  Further, the Government fully expects that this Court will be able to expeditiously schedule and complete a trial in this matter, to the extent the parties do not ultimately reach a pre-trial disposition.

### 10. Special Considerations

Finally, two factors independently warrant denying Little's motion.  First, granting Little's motion would require severing the two defendants in this matter and having duplicative judicial proceedings, including possibly trials.  Berke has not joined Little's motion, and Federal Rule of Criminal Procedure 21 only authorizes the Court to transfer the proceeding as to a moving

14

defendant.  *See* Fed. R. Crim. P. 21(b) ("Upon the defendant's motion, the court may transfer the proceeding . . . *against that defendant* to another district . . . .") (emphasis added); *see also United States* v. *Corallo*, 281 F. Supp. 24, 26 (S.D.N.Y. 1968).  Thus, transfer would result in a significant and unnecessary expenditure of governmental and judicial resources.

Other courts have denied requests to transfer under these circumstances.  In *United States* v. *Zylstra*, 713 F.2d 1332 (7th Cir. 1983), for example, the court affirmed a district court's denial of a motion to transfer sought by only two of eleven defendants for precisely this reason:

> If the court had granted the defendant's initial motion for change of venue it would in all probability have resulted in the severance of several trials into multiple trials in various districts throughout the country involving the other codefendants.  Such a multiplication of litigation would have resulted in great inconvenience to all the witnesses (repeated appearances in various and sundry judicial districts) as well as greater expense.

*Id.* at 1336.  The Seventh Circuit continued by cautioning that "[c]ourts must be mindful of these difficulties as well as the actual expense and waste of court time in our severely burdened and overtaxed federal judicial system," especially given that "'[c]riminal defendants have no constitutional right to have a trial in their home districts.'"  *Id.* (quoting *United States* v. *McManus*, 535 F.2d 460, 463 (8th Cir. 1976)).

Similarly, in *United States* v. *Wheaton*, 463 F. Supp. 1073 (S.D.N.Y. 1979), a court in this District found that a defendant had failed to meet his burden in seeking transfer because "[o]nly a minority of the defendants . . . ha[d] moved for a transfer," and "[t]he cases of the non-moving defendants cannot be transferred."  *Id.* at 1078-79.  Thus, "if [the defendant's] motion were to be granted separate trials would be required in Chicago and New York.  It is obvious that the resultant duplication would impose substantial extra expense on the government as well as a double burden on the judiciary."  *Id.* at 1079; *see also United States* v. *Bloom*, 78 F.R.D. 591, 610 (S.D.N.Y. 1977) (denying transfer motion because it would result in severance and "judicial economy will

15

be served by a joint trial"); *United States* v. *Smith*, 412 F. Supp. 1, 4 (S.D.N.Y. 1976) (denying request to transfer because doing so would require severance and "the interests of justice and judicial economy would be enhanced by trying all defendants in the same district"). Under these circumstances, transfer would entail a misuse of resources and accordingly not be "in the interests of justice" under Federal Rule of Criminal Procedure 21(b).

Second, Little has not at this point moved to transfer the SEC Action. The Government does not know how the SEC would respond to such a motion, but, having charged in this District, they would presumably oppose it. There is an accordingly a likelihood that, even if this case were transferred, Little would still need to litigate and try the SEC Action in the Southern District of New York. If anything, the simultaneous litigation in multiple districts would be more, rather than less, burdensome for him. And while Berke claims that the SEC Action has been fully stayed, that claim is incorrect; as discussed above, the Government sought only a limited stay of discovery for materials that would qualify as Jencks Act discovery in the criminal case.[3] No other aspect of that case—including document discovery and motions practice, for example—was affected by the Government's stay. *See supra* at 3, 16 n.3.

---

[3] The Government sought, and Judge Koeltl granted, a stay of the following types of discovery:

> (a) all depositions  interrogatories, requests for admission, and, in addition to these forms of discovery, any other form of discovery that would create statements of any person whom the Government asserts may be called as a witness in the criminal prosecution; (b) production of transcripts of testimony and notes or memoranda describing interviews with; written statements made or adopted in the course of an interview by; or correspondence concerning interviews of any person whom the Government asserts may be called as a witness in the criminal action; and (c) disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i).

July 14, 2017 Mot., *SEC* v. *Little et al.*, No. 17 Civ. 3536 (JGK) [Dkt. 27] at 3.

**CONCLUSION**

For the aforementioned reasons, the Government respectfully submits that application of the *Platt* factors suggests that Little's motion should be denied. The defendant has not carried his burden of "justify[ing] a transfer under Rule 21(b)," *Spy Factory*, 951 F. Supp. at 464, particularly given the "general rule [that] a criminal prosecution should be retained in the original district" in which it was filed, *United States Steel Corp.*, 233 F. Supp. at 157.

Dated: New York, New York
         August 17, 2017

                                   Respectfully submitted,

                                   JOON H. KIM
                                   Acting United States Attorney

                         By:       /s/ Robert Allen
                                   Robert Allen
                                   Assistant United States Attorney
                                   Tel.: (212) 637-2216

17